Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3639 | **DATE** | 2/14/02 |
| **CASE TITLE** | GEORGIA PAULOS-JOHNSON, et al. vs. ADVOCATE TRINITY HOSPITAL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Advocate Trinity Hospital's motion for summary judgment against Georgia Paulos-Johnson and Elenor Rodriguez [11-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | 2-15-02 date docketed | 27 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| SB courtroom deputy's initials | | 02 FEB 14 PM 4:36 date/time received in central Clerk's Office | date mailed notice CB mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGIA PAULOS-JOHNSON, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ADVOCATE TRINITY HOSPITAL ) <br> ) <br> Defendant. ) <br> ) | No. 01 C 3639 <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Georgia Paulos-Johnson ("Paulos-Johnson"), Elenor Rodriguez ("Rodriguez") (collectively, "plaintiffs") and Victoria Flores ("Flores") sue Advocate Trinity Hospital ("Advocate") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Specifically, Paulos-Johnson claims race discrimination, Rodriguez claims retaliation and Flores claims race and national origin discrimination and retaliation. Advocate moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Paulos-Johnson's race discrimination claim and Rodriguez's retaliation claim.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Local Rule 56.1 requires both the moving and non-moving parties to submit a statement of material facts, including, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule

1

56.1(b)(3)(B). Evidence submitted at summary judgment must be admissible at trial under the Federal Rules of Evidence. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). All facts not properly supported by the record evidence must be disregarded. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

Plaintiffs cite documents written by Paulos-Johnson as the only evidentiary support for paragraphs 29, 30, 39, 40, 45 and 48 of their statement of material facts. Plaintiffs similarly rely on a charge of discrimination ("charge") filed by Rodriguez as the only evidentiary support for paragraph 5 of their statement of material facts. To the extent plaintiffs offer the documents to prove the truth of the matter asserted in each paragraph, the documents are inadmissible hearsay and cannot be considered on summary judgment. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 741 (7th Cir. 1997)(hearsay evidence is inadmissible on summary judgment).

Plaintiffs may offer the documents supporting paragraphs 5, 30, 39, 40 and 48 to establish notice to Advocate of comparative performance problems. Nevertheless, plaintiffs' conclusion that Advocate failed to take corrective action in response to the notice must be disregarded absent a showing of personal knowledge. *See Abioye v. Sunstrand Corp.*, 164 F.3d 364, 367 (7th Cir. 1998)(court may disregard conclusory statements regarding comparatives where personal knowledge has not been established).

Paragraphs 42 and 43 of plaintiffs' statement of facts are similarly flawed as they are based, in whole or in part, on unauthenticated documents lacking the requisite foundation. Paragraphs 44, 47, 49 and 52 of plaintiffs' statement of facts also are premised, in whole or in part, on testimony based on inadmissible hearsay rather than personal knowledge. Accordingly, plaintiffs' factual statements are disregarded where they are not supported by admissible evidence.

In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993).

Plaintiffs' responses to paragraphs 32, 49, 50 and 94 of defendant's statement of facts fail, in whole or in part, to cite to record evidence supporting the denials. Indeed, paragraph 50 of defendant's statement of material facts is identical in substance to paragraph 23 of plaintiffs' statement of facts. Advocate's factual statements, if properly supported, are deemed admitted to the extent that plaintiffs' denials fail to comply with Local Rule 56.1.

## II. Facts

### A. Paulos-Johnson

All facts are undisputed unless otherwise noted. On August 2, 2000, Sharon Perry (African-American), Director of Advocate's Women's and Children's Services Department, hired Paulos-Johnson (Caucasian) to work the night shift as a registered nurse. Perry remained Paulos-Johnson's supervisor throughout her employment. However, Brenda Ledbetter (African-American) was the charge nurse or acting manager on the night shift until approximately November 2000. Thereafter, Paulos-Johnson also reported to manager Susan Riegel (Caucasian).

3

On August 20, 2000, Perry suspended Paulos-Johnson pending an investigation into whether she falsified a chart. Thereafter, Perry reinstated Paulos-Johnson with full pay after finding no truth to the allegation. Several days later, Paulos-Johnson requested a meeting with Perry and Ledbetter, the individual responsible for the allegation against Paulos-Johnson. During the meeting, Paulos-Johnson informed Perry that Ledbetter did not want Paulos-Johnson working at Advocate because Paulos-Johnson posed a threat in exposing Ledbetter's alleged practice of exaggerating her credentials. Paulos-Johnson requested and received an apology from Ledbetter.

On September 6, 2000, Paulos-Johnson disagreed with Ledbetter's decision to send all postpartum patients to the fourth floor where Paulos-Johnson was working. Paulos-Johnson told Ledbetter that she was "not going to send all of the patients [to the fourth floor] so [she could] sit on [her] ass all night while [Paulos-Johnson] did the work." On September 11, 2000, Perry issued Paulos-Johnson a written warning for using inappropriate language in the workplace. Perry informed Paulos-Johnson that any future violations would result in additional disciplinary action, up to and including termination.

On October 3, 2000, Perry issued a "memo of concern" to Paulos-Johnson, requesting that Paulos-Johnson improve her working relationship with Ledbetter because the daily conflicts were disruptive. Perry informed Paulos-Johnson that if the conflicts continued, she would take additional disciplinary action, up to and including termination. Paulos-Johnson responded in writing, complaining that Advocate held her to a higher standard than her African-American colleagues who often used profanity in the workplace.

On October 28, 2000, the sister of a patient lodged a complaint against Paulos-Johnson claiming that Paulos-Johnson treated her rudely. On November 10, 2000, another patient

4

complained that Paulos-Johnson had bumped into her in the hallway because Paulos-Johnson was "rushed and out of control." The same patient complained that Paulos-Johnson demanded that a father of a baby leave the delivery room.

On November 13, 2000, Perry issued a written warning to Paulos-Johnson based on the complaints. Perry once again warned Paulos-Johnson that any future violations would result in additional disciplinary action, up to and including termination. Paulos-Johnson complained to Toni Johnson, Human Resources, that Advocate held her to a higher standard than her African-American co-workers.

On December 12, 2000, an aide was concerned about a patient with a latex allergy. On her own initiative, Paulos-Johnson entered the patient's room without identifying herself to inquire about the allergy. Paulos-Johnson testified she told the patient:

> I understand you are listed as having a latex allergy. I said but I see you have an IV in and you're on chucks, if you really had an allergy, this would be a very serious thing that would lead to anaphylaxis and including death and I'm concerned we have you listed as an allergy and do you have any further information for me.

The patient complained. Paulos-Johnson tried to apologize to the patient and her husband, but claimed that the husband "was angry and didn't want to hear it."

Thereafter, Riegel met with the patient, who informed Riegel that she and her husband were very upset by the way Paulos-Johnson had spoken to them. Riegel then met with Paulos-Johnson to inform her that she was suspended pending an investigation. Paulos-Johnson told Riegel that the patient complaint was valid because her conduct was inappropriate.

On December 18, 2000, Riegel and Johnson met with Paulos-Johnson. Riegel terminated Paulos-Johnson's employment based on her disciplinary history, including the most recent patient complaint.

5

## B. Rodriguez

Advocate hired Rodriguez as a housekeeper on September 30, 1992. Rodriguez's duties included cleaning patients' rooms and other assigned areas in the hospital. In 1998, Advocate hired a new management company, Aramark. In May 1998, Dottie Boatner, manager of support services, became one of Rodriguez's supervisors.

Aramark restructured the housekeeper position to include responsibilities for dietary and transport. As part of the restructuring, Boatner interviewed Rodriguez for the newly created position of patient service associate. On August 15, 1998, Boatner selected Rodriguez for the new position, but reduced her work schedule from 40 to 32 hours per week.

On September 21, 1998, Rodriguez filed a complainant information sheet with the Illinois Department Human Rights ("IDHR") claiming race and age discrimination. On October 27, 1998, Rodriguez filed a grievance with Advocate alleging national origin and ancestry discrimination relating to the reduction in hours. In December 1998, Rodriguez filed a charge with the IDHR claiming Boatner demoted her from a full-time position to a part-time position based on her national origin/ancestry.

On January 15, 1999, Advocate denied Rodriguez's grievance, but concluded that her status should be adjusted to full-time to reflect her schedule of 40 hours per week during the previous two months. On January 27, 1999, Advocate returned Rodriguez to full-time status. On February 27, 1999, Rodriguez voluntarily withdrew her charge because Advocate had returned her to a full-time position.

On April 13, 1999, Rodriguez received a written warning from Boatner for three absences within a 90 day period. Rodriguez cannot recall whether she was absent on those three occasions.

On May 3, 1999, Rodriguez applied for a transfer. The job transfer application states that an employee must not have any active disciplinary actions when applying for posted positions. Rodriguez's request for a transfer was denied based on the written warning.

On July 14, 1999, Rodriguez filed a grievance with Advocate alleging that Boatner retaliated against her because of her prior complaints. Rodriguez's grievance did not mention the written warning. On July 25, 1999, Rodriguez filed a second charge with the IDHR claiming national original and age discrimination and retaliation based on Boatner's treatment. Rodriguez's charge did not mention the written warning. On September 1, 1999, Boatner issued a written warning to Rodriguez for failure to wear a uniform.

On November 29, 1999, William Groeper, Director of Financial Services, issued Rodriguez a final written warning for failing to reimburse Advocate for a check she wrote that had been returned for insufficient funds. Groeper warned Rodriguez "[f]uture rule violations will result in continued discipline up to and including termination." Rodriguez admits that she had prior notice of the problem with her account. Rodriguez immediately paid Advocate the amount due.

On January 19, 2000, team leader Carol Moss issued Rodriguez a written warning for failure to complete a work assignment as instructed. On March 24, 2000, Boatner issued a written warning to Rodriguez for failing to punch in or out on six or more occasions during the previous 90 day period.

On April 3, 2000, Rodriguez informed Boatner that she was going to the dentist during her lunch break because she had a toothache. Rodriguez told Boatner that she thought she would return in 30 minutes. After Rodriguez's 30 minute lunch break ended, Cindy Apps, support manager, paged Rodriguez to perform a task. Rodriguez called Apps to tell her that she was at the dentist.

7

When Apps asked Rodriguez when she would return, Rodriguez replied "as soon as I get off the phone with you, I'll go back to work." Thereafter, Boatner paged Rodriguez with a text message requesting that Rodriguez call her. Rodriguez did not answer the page until the dentist completed the work on her tooth. Rodriguez returned to work 30 minutes late.

Moss then paged Rodriguez to the office where she and Boatner were waiting. Boatner informed Rodriguez that she was terminated for leaving her area unattended.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II. Paulos-Johnson's Race Claim

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions or privileges of employment based on the employee's race. 42 U.S.C. § 2000e-2(a). In order to prove a case of race discrimination under Title VII, Paulos-Johnson must offer either direct or indirect evidence of discrimination. *Mills v. Health Care Service Corporation*, 171 F.3d 450, 454 (7th Cir. 1999). She does not offer any direct evidence of race discrimination. Instead, she relies on the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish her claim of race discrimination.

In order to establish a *prima facie* case of reverse race discrimination under Title VII, Paulos-Johnson must show (1) background circumstances that support an inference of discrimination; (2) she met her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Mills*, 171 F.3d at 457. If Paulos-Johnson establishes a *prima facie* case, the burden of production shifts to Advocate to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Advocate sets forth a legitimate justification, the burden then shifts back to Paulos-Johnson to prove that Advocate's reason is a mere pretext for discrimination. *Id.* The ultimate burden of persuasion remains at all times with Paulos-Johnson. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

Advocate argues that Paulos-Johnson cannot establish a *prima facie* case of reverse race discrimination. Although Advocate concedes that Paulos-Johnson can prove the third element of her *prima facie* case through her termination, Advocate claims summary judgment is appropriate because Paulos-Johnson cannot establish the first, second or fourth elements of a *prima facie* case.

Advocate first contends that Paulos-Johnson has not established background circumstances indicating she was fired because she is Caucasian. Background circumstances include evidence indicating (1) "the particular employer at issue has some reason or inclination to discriminate invidiously against whites"; (2) "there is something 'fishy' about the facts of the case at hand"; and (3) the employee was "the only white employee in the department and nearly all of the decisionmakers were [not white]." *Mills*, 171 F.3d at 455.

Paulos-Johnson claims that "she was the only white employee in the department", but relies on inadmissible hearsay as evidence of her claim. Assuming that Paulos-Johnson could testify that she, along with Flores, were the only two non-African-American employees in the department prior to their terminations, Paulos-Johnson has failed to demonstrate that "nearly all of the decisionmakers" were not Caucasian. Indeed, Riegel, who is Caucasian, made the decision to terminate Paulos-Johnson's employment.

Nor can Paulos-Johnson establish that she performed her job in accordance with Advocate's legitimate expectations. During her approximately four month employment, Advocate issued Paulos-Johnson two written warnings and a memo of concern. Advocate warned Paulos-Johnson each time that any future violations would result in additional disciplinary action, including possible termination.

Advocate's second written warning to Paulos-Johnson was based on two patient complaints. One month later, a third patient complained about her behavior. Paulos-Johnson admits the validity of the third patient's complaint, which ultimately resulted in her termination. Based on her own testimony, Paulos-Johnson cannot prove that she met Advocate's legitimate expectations.

10

Moreover, Paulos-Johnson has not provided any admissible evidence that other similarly situated employees outside the protected class were treated more favorably. Although Paulos-Johnson claims that other employees committed similar infractions, but were not reprimanded, she fails to demonstrate that Advocate did not take corrective action against these employees. Without this necessary link, she cannot establish that Advocate treated similarly situated employees more favorably.

Finally, Paulos-Johnson has not presented any evidence that Advocate's decision rested upon a legally forbidden ground. *See Mills*, 171 F.3d at 457, *citing Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158-59 (7th Cir. 1996) (plaintiff may shift the burden without *prima facie* case by establishing "a logical reason to believe that the [employer's] decision rests on a legally forbidden ground"); *see also Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). Although Paulos-Johnson provides some admissible evidence that Ledbetter interfered with her employment, she does not provide any evidence connecting Ledbetter's actions to her race. To the contrary, Paulos-Johnson claimed Ledbetter viewed Paulos-Johnson as a threat because she exposed Ledbetter's alleged credential falsification. Without any evidence that Advocate's decision to terminate her was based on her race, Paulos-Johnson's race discrimination claim fails as a matter of law.

### III. Rodriguez's Retaliation Claim

Title VII prohibits employers from retaliating against employees who oppose allegedly discriminatory practices. 42 U.S.C. § 2000e-3(a). In order to prevail on a claim of retaliation, Rodriguez must offer either direct or indirect evidence of retaliation. *Smart v. Ball State University*,

89 F.3d 437, 439 (7th Cir. 1996). As Rodriguez does not offer any direct evidence of retaliation, she must prove her case indirectly under the burden-shifting method established in *McDonnell Douglas*.

To establish a *prima facie* case of retaliation under Title VII, Rodriguez must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected expression and the adverse action. *Worth v. Tyler*, 276 F.3d 249, 265 (7th Cir. 2001). If Rodriguez establishes a *prima facie* case, the burden of production shifts to Advocate to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If Advocate sets forth a legitimate justification, the burden then shifts back to Rodriguez to prove that Advocate's reason is a mere pretext for retaliation. *Id.* The ultimate burden of persuasion remains at all times with Rodriguez. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

Advocate does not dispute that Rodriguez can establish the first and second elements of a *prima facie* case. Rather, Advocate argues that Rodriguez cannot establish a causal connection between protected activity and the adverse employment action. The timing of the discharge may provide the necessary causal nexus. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). A close temporal connection between the two events "is generally enough to satisfy the third element of the *prima facie* test." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997). Additional proof is necessary only when the inference of retaliation is weakened through passage of time. *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001).

Rodriguez filed her last charge on July 25, 1999. She was terminated on April 3, 2000. Eight months between the protected activity and the adverse employment action, standing alone, is too attenuated to support Rodriguez's claim of retaliation. *See Sauzek v. Exxon Coal USA, Inc.*, 202

F.3d 913, 918-19 (7th Cir. 2000)(three months too long to support an inference of retaliation). Therefore, Rodriguez must come forward with additional evidence to establish the required causal link.

Rodriguez argues that Boatner was engaged in a calculated effort to build a case against her after she filed her first charge. However, she does not offer evidence connecting any disciplinary action taken against her by Boatner to her complaints of discrimination. Indeed, Groeper, not Boatner, issued the final written warning against Rodriguez approximately four months prior to her termination. Even if the timing of the reprimands subsequent to her charges could provide the causal connection, Rodriguez has not established the pretext necessary to ward off summary judgment.

Rodriguez does not dispute that Advocate offers legitimate non-discriminatory reasons for her termination. Advocate's burden of production is "quite light" and "the mere articulation of the reason . . . puts the onus back on the plaintiff to prove pretext." *Flores*, 182 F.3d at 515. Advocate claims Rodriguez was terminated for leaving her work area unattended after receiving two written warnings for other rule violations. The burden then shifts back to Rodriguez to show that Advocate's reasons for her termination are pretextual.

When an employer offers multiple reasons for its employment decision, the employee must show that all of the proffered reasons are pretextual. *Ghosh v. Indiana Dep't of Environmental Mgmt.*, 192 F.3d 1087, 1091-92 (7th Cir. 1999). Rodriguez may establish pretext either directly, by showing Advocate's decision to terminate was more likely than not motivated by discriminatory reasons, or indirectly, by showing that Advocate's reasons are unworthy of belief. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Worth*, 276 F.3d at 265-66. "The indirect method requires some showing that (1) the defendant's explanation has no basis in fact or

(2) the explanation was not the real reason, or (3) the reason stated was insufficient to warrant the termination." *Worth*, 276 F.3d at 266. Rodriguez has not presented any direct evidence of pretext. Therefore, Rodriguez must show that Advocate lied about its reasons for terminating her.

Rodriguez disputes the accuracy of the first warning. However, "[s]elf-serving statements do not shed any light on whether the employer honestly based its employment decision on performance-related considerations, which is the focus of our inquiry in these cases." *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998), *quoting Dey*, 28 F.3d at 1460. Indeed, Rodriguez admits that she cannot recall whether she was absent on the occasions for which she received the warning. Thus, Rodriguez has not presented any evidence that would call into question Advocate's sincerity in issuing the warning.

Rodriguez also claims that the final written warning issued by Groeper over the returned check was unfair because she promptly paid the amount due. She further argues that her termination was unfair because she returned 30 minutes late from lunch due to a medical emergency. However, she does not offer any evidence disputing the facts underlying the warning or her termination. To the contrary, she admits she had prior notice of the problem with the returned check and she was 30 minutes late returning to work after her lunch break. Title VII does not prohibit an employer from making an employment decision based on infractions that the employee deems *de minimis*. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999). Therefore, the court will not reexamine the business judgment of an employer acting pursuant to facially legitimate policies. *Id.*

Finally, Rodriguez has not produced evidence that Advocate treated any employee differently after bouncing a check or returning to work 30 minutes late. *See Johnson v. West*, 218 F.3d 725, 733 (7th Cir. 2000)(pretext may be shown by evidence that other similarly situated employees outside

14

protected class committed similar infractions but were not similarly disciplined). Therefore, Rodriguez has ultimately failed to carry her burden of establishing pretext.

## CONCLUSION

Advocate is entitled to judgment as a matter of law on all claims advanced by Paulos-Johnson and Rodriguez.

Date: 2/14/02

ENTER:

Suzanne B. Conlon
United States District Judge